**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

EASTERN POINT TRUST COMPANY,    )
    )
    Plaintiff,    )
    )
**v.**    )    Case No.: **1:25-cv-1787**
    )
**FLATIRONS BANK et al.**    )
    )
    Defendants.    )

**PLAINTIFF EASTERN POINT TRUST COMPANY'S
OPPOSITON TO THE MOTION TO DISMISS OF
DEFENDANTS TOWN OF GLENROCK, WY,
BRUCE ROUMELL, AND AMY IBERLIN**

COMES NOW YOUR Plaintiff, Eastern Point Trust Company ("EPTC" or "Eastern Point") and for its Opposition to the Motion to Dismiss of Defendants Town of Glenrock ("Glenrock"), Bruce Roumell ("Roumell"), and Amy Iberlin ("Iberlin") (collectively, at times, "Glenrock Defendants"), states as follows:

## I.   INTRODUCTION[1]

This is a case about outright theft.  The Motion to Dismiss at issue here pertains to the Glenrock Defendants, but this case involves numerous other parties.  Co-Defendants Jakob Norman ("Norman"), Nicholas Coccimiglio ("Coccimiglio"), William Bunnell ("Bunnell"), Michael Upchurch ("Upchurch"), Trial Lawyers for Justice ("TLJ"), and Justice for Life ("JFL" ("Contract Defendants") all entered into contracts with Eastern Point, the terms of which were repeatedly confirmed and agreed to over the course of years.  The contracts related to the establishment and management of Qualified Settlement Funds ("QSF") which are funds utilized

---

[1]  At the time of this filing, Plaintiff has filed a Consent Motion for Leave to file its Second Amended Complaint. This Opposition is being filed nevertheless owing to the still-existing deadline previously ordered.  By filing this Opposition, Eastern Point does not withdraw the previously filed Consent Motion.

for the orderly distribution of settlement funds, most often in the mass tort litigation context.  In such contracts, the Contract Defendants agreed to terms which prohibited direct competition with Eastern Point and which prohibited the misappropriation of Eastern Point's trade secrets, namely Eastern Point's QSF 360$^{TM}$ platform.  Contract Defendants ignored their contractual obligations and proceeded to steal Eastern Point's intellectual property and to use the same to directly compete with Eastern Point in the QSF industry.  Contract Defendants further engaged and conspired with Flatirons Bank ("Flatirons"), Timothy Krochuk ("Krochuk"), and Trellis Software ("Trellis")— all of whom were fully aware of or on notice of Eastern Point's claims of right—to effectuate the breach of Contract Defendants' agreements and theft of Eastern Point's trade secrets.  The actions of Defendants serve to subject them to the jurisdiction of the Commonwealth of Virginia either by way of contractual agreement, purposeful action directed to the Commonwealth or by causing tortious injury in the Commonwealth.

The Glenrock Defendants played key and crucial roles in the actions of the Contract Defendants, Flatirons and other Defendants.  In order to fully implement the plans to steal Eastern Point's intellectual property, the Contract Defendants required a "governmental authority" to approve QSFs established by Contract Defendants.  Glenrock played that role when it knew or should have known that the basis for Contract Defendants' operation was the stolen trade secrets belonging to Eastern Point.  Glenrock has further obfuscated Eastern Point's legitimate and lawful attempts to obtain information about Glenrock's own actions.

Glenrock Defendants move to dismiss on personal jurisdiction grounds pursuant to Rule 12(b)(2) and pursuant to Rule 12(b)(6) on the grounds that the Amended Complaint does not state a claim.  For the reasons that follow, the Motions to Dismiss of Glenrock Defendants should be DENIED as to all Counts and personal jurisdiction should be found to exist.  As the Court will be

2

aware, the non-Glenrock Defendants filed a separate Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) (**Dkt 57-58**) and Eastern Point has, accordingly, filed an opposition brief ("Flatirons Opposition") to that motion.  Where possible, Eastern Point has sought to avoid simply restating arguments already made and will incorporate by reference arguments made in the Flatirons Opposition where appropriate.

For ease of reference and further clarity, Eastern Point here outlines the references to various combinations of Defendants as the same was stated in the Amended Complaint and as may be used in this Opposition Brief:

**"Contract Defendants"** as referenced above are Norman, Coccimiglio, Bunnell, Upchurch, TLJ, and JFL.  These Defendants entered into contractual agreements with Eastern Point and Counts I through VI of the Amended Complaint are breach of contract claims against these Defendants.

**"Settlement Defendants"** refers to Norman, Coccimiglio, Bunnell, and Upchurch as defined in the Amended Complaint in Section II(A) of the Amended Complaint, p. 25.

**"JE Conspirators"** refers to participants in the "JE Conspiracy" and are identified in paragraph 131 of the Amended Complaint as Norman, Coccimiglio, Bunnell, Upchurch, Barber, Flatirons, Krochuk, Trellis, Town of Glenrock, Roumell, Iberlin, Murray and John Does.

**"Trade Secret Defendants"** are defined in the Amended Complaint on page 66 as Flatirons, Coccimiglio, Bunnell, Krochuk, Trellis, Iberlin and Murray.

## ARGUMENT

### I.    The Court should strike the Glenrock Defendants' Memorandum of Law.

At the outset, the Court should not consider the Glenrock Defendants' Memorandum In Support ("Memo") because it is unsigned. (**Dkt. 56**)  Under Rule 11, "[e]very pleading, written

3

motion, and other paper must be signed by at least one attorney of record in the attorney's name," and "the court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a).  Eastern Point hereby brings the fact of the pleading being unsigned and the Court should, respectfully, strike the pleading if the same is not corrected.

## II.     The Exhibit-Prevails Rule does not apply.

The Glenrock Defendants make various argument that the exhibits attached to the Amended Complaint conflict with allegations. Memo.  pp. 5–8. Urging the imposition of the exhibit-prevails rule, the Glenrock Defendants argue that dismissal is appropriate because the deposition transcripts conflict with the allegations in the Amended Complaint. *Id.* However, the deposition transcripts are clearly not adopted by Eastern Point, nor do they reveal that the Glenrock Defendants are innocent parties.

"[In] cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). "[I]f a plaintiff attaches or references a report prepared by a third-party to show how he learned of certain facts alleged in his complaint, he does not automatically adopt all of the factual conclusions contained in the [exhibit]." *Id.*  Indeed, in *Goines*, the 4th Circuit reversed a 12(b)(6) dismissal where the trial court had inappropriately applied the exhibit-prevails rule to a police report attached to plaintiff's complaint. *Id.* at 168.  The proper course is to consider why the plaintiff has attached the document and whether the plaintiff's claims are based on the document.  *Id.*

Here, Eastern Point included the deposition transcripts, prepared by a third-party court reporter, for the express purpose of demonstrating that the Glenrock Defendants "cumulatively

represented approximately 300 times that they had no recollection of matters about which they had previously been vociferously outspoken, like Eastern Point's QSF business." Am. Comp. ¶ 310 n.12. And if there existed any doubt, Eastern Point expressly alleged "Glenrock, through Mayor Roumell, and Iberlin have made several materially false, misleading, or irreconcilable statements in their sworn depositions. This deception demonstrates the knowledge of the conspiracy and their respective participation therein." Am. Comp. ¶ 314. Eastern Point included the transcripts for purposes other than truthfulness—quite the opposite.  The Court should, therefore, not adopt the exhibits-prevail rule. *See Goines*, 822 F.3d at 168 ("Because [the plaintiff] did not rely on the [exhibit] for its truthfulness, the district court erred by treating as true the factual statements contained in the [exhibit].").

Further, as a practical matter, it would be impossible to construe such statements as true because the Glenrock Defendants made repeated inconsistencies. For example, the following exchange occurred at Ms. Iberlin's deposition:

> **Q.    It's your testimony that you never advised [Glenrock] in any way on the legality of approving QSFs, correct?**
> A.    True.

*Iberlin Depo.*, at 95:16–19. Conversely, Mayor Roumell testified the exact opposite:

> **Q.    In your mind, what is your basis for your authority to approve QSFs on behalf of Glenrock for Flatirons?**
> [Counsel for Glenrock]:
>     Same objection [as to form, foundation, and calls for a legal conclusion].
> [A.]    My authority to do that was discussed and done between myself and my city attorney at that time, that we decided we would — we would do — we would represent and do that for — for Flatirons.
> [Counsel for EPTC's private investigator]:
> **Q.    And that was Amy Iberlin?**
> A.    Amy Iberlin, yes, sir.
> **Q.    Do you have any other basis for authority?**
> A.    I do not.

*Roumell Depo.*, at 22:9–22. Indeed, what the transcripts ultimately demonstrate is the lengths in which the Glenrock Defendants were willing to go in order to further the conspiracy, including conduct by either a licensed attorney or an elected mayor that is tantamount to perjury. Thus, even accepting the Glenrock Defendants' argument at face value, the Court cannot conclude the transcripts disprove any of Eastern Point's allegations because they inherently disprove themselves.

Consequently, the arguments that the Glenrock Defendants generally assert in pages 5-8 of their Memorandum should be wholly disregarded to the extent they were premised on taking the self-serving and contradictory deposition testimony as true.

**III.    12(b)(2)—This Court Has Personal Jurisdiction Over Defendants**

**A.    Legal Standard**

**1.    Correct Evidentiary Standard**

Under Rule 12(b)(2) "a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such challenge." *Grayson v. Anderson,* 816 F.3d 262, 267 (4th Cir. 2016). The question is generally resolved by the court as a preliminary matter. *Id.* Where the court resolves the question solely through consideration of motion papers, affidavits, legal memoranda, and the operative complaint a plaintiff need only establish a *prima facie* showing of personal jurisdiction. *Id.* at 268. Where the court requires a plaintiff to establish facts supporting personal jurisdiction, it must conduct an evidentiary hearing and a preponderance of the evidence standard applies. *Id.* (citing cases). In *Grayson*, the 4th Circuit held that an "evidentiary hearing" did not necessarily mean live testimony, but rather a "fair opportunity to present both the relevant jurisdictional evidence and their legal arguments." *Id.* Recently, the 4th Circuit gave further guidance on what

6

is required by an "evidentiary hearing" and whether to apply a *prima facie* or preponderance standard. In *OSRX v. Anderson*, 2025 U.S. App. LEXIS 12083 (4th Cir. 2025) (Unpub.), the Court vacated a Rule 12(b)(2) dismissal where the trial court did not apply the *prima facie* standard. *Id.* *18. The trial court in *OSRX* had actually convened a hearing but it was limited to legal argument with the parties being limited to 25 minutes of oral argument each. *Id.* at *17-18. This was not a fair opportunity to present "any jurisdictional evidence" and the *prima facie* evidence standard applied. *Id.* at *18.

In this case, the Court has already announced that it will resolve the motions to dismiss without an oral hearing. Docket Entry dated Feb. 23, 2026 ("Per RDA's chambers, motions set for 5/6/2026 will be decided on the papers; no oral argument will be heard"). Accordingly, Eastern Point submits that the *prima facie* standard applies here and that the "allegations and available evidence relating to personal jurisdiction" must be taken in the light most favorable to Eastern Point. *Grayson*, 816 F.3d at 268. Indeed, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Baker*, 886 F.2d 673, 676 (4th Cir. 1989).

### 2.    Personal Jurisdiction Standards

In this diversity case, the Virginia "long arm statute" is applicable and this Circuit has interpreted Virginia law to grant the full extent of personal jurisdiction permitted under the due process clause. *Consulting Engineers Corp. v. Geometrics LTD.*, 561 F.3d 273, 277 4th Cir. 2009); *see also*, § 8.01-328.1 Va. Code Ann. Under the due process clause, a state may exercise either general ("all purpose") jurisdiction or specific ("case-linked") jurisdiction. *al-Suyid v. Hifter*, 139 F.4th 368, 376 (4th Cir. 2025). Eastern Point makes no claim that the Glenrock Defendants are "at home" in Virginia and thus subject to general jurisdiction. *Id.*

To exercise specific personal jurisdiction, a defendant must have "minimum contacts" such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice" *Khashoggi v. NSO Grp. Techs. LTD.*, 138 F.4th 152, 159 (4th Cir. 2024).  This Circuit applies a 3-pronged test:  "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.*

Eastern Point has fully addressed personal jurisdiction as it applies to the non-Glenrock Defendants in the Flatirons Opposition.  The points and arguments made therein are hereby incorporated by reference.  The Glenrock Defendants' specific personal jurisdiction arises from their role in the conspiracy with the other Defendants, in particular the Defendants identified as the Contract Defendants.

### A.  Co-conspirator personal jurisdiction is satisfied.

Based on the existence of personal jurisdiction as to the Contract Defendants as more fully set forth in the Flatirons Opposition,  specific personal jurisdiction as to the Glenrock Defendants is satisfied through the "conspiracy theory of jurisdiction." The Fourth Circuit recognizes that courts may exercise personal jurisdiction over non-resident defendants based on their co-conspirators' contacts with the forum state. *See Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013). To establish conspiracy jurisdiction, plaintiffs must make a plausible claim that: "(1) that a conspiracy existed; (2) that the defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with Virginia to subject that conspirator to jurisdiction in Virginia." *Id.* Here, the allegations support imputing coconspirators' contacts to the Glenrock Defendants.

First, EPTC alleges sufficient facts demonstrating a conspiracy existed. The Amended Complaint alleges that "the JE Conspirators combined for the criminal or unlawful purposes of obtaining an unfair business advantage over Eastern Point and generally inflicting injury and damage upon Eastern Point." Am. Comp., ¶ 518. As set forth in ¶¶ 131 through 320, EPTC alleges specific facts supporting this result. In summation, Defendants Jakob Norman, Nick Coccimiglio, Courtney Barber, and William Bunnell entered Eastern Point's offices in Virginia and obtained confidential information subject to nondisclosure agreements and under false pretenses. *Id.* ¶¶ 198–218. Once adding members to the conspiracy, the conspirators began to enlist governmental entities to approve their QSFs. *Id.* ¶ 246. This included the conspirators using Eastern Point's documents to recruit small Wyoming governmental entities to be its authorizing body. *Id.* ¶¶ 248–63. These allegations are more than sufficient to demonstrate that multiple parties agreed to commit an unlawful act, including breach of contract, unfair business practices, and various other causes of action.

Second, there are sufficient allegations demonstrating that the Glenrock Defendants participated in the conspiracy. As alleged in the Amended Complaint, the coconspirators persuaded the Town of Lovell, Wyoming ("Lovell") to briefly act as its authorizing governmental entity, but Lovell withdrew, likely due to the arrangement violating U.S. Tax Code. *Id.* ¶ 264. Desperate to find another municipality, the coconspirators enlisted Ms. Iberlin to aggressively advertise Justice Escrow to multiple municipalities, including the City of Casper—a municipality that Ms. Iberlin does not represent. *Id.* ¶ 277. Public records reveal that Ms. Iberlin or her firm was offered $50 per QSF approval as a finder's fee. *Id.* ¶¶ 274–75.

In addition, Ms. Iberlin had full knowledge of the unlawful conspiracy, which is evidenced by exchanging files with EPTC branded in the title. *Id.* ¶¶ 281–85. Mayor Roumell and the Town

of Glenrock joined the conspiracy when Ms. Iberlin exchanged such documents. *Id.* ¶ 286. While this alone is sufficient, the Glenrock Defendants unquestionably joined of the conspiracy when Lovell's town attorney sent the cease-and-desist letters to one of Glenrock's agents. *Id.* ¶¶ 289–90. And if there existed any doubt, the Glenrock Defendants violated their duties to provide public records by erroneously claiming privilege over documents, delegating their constitutional obligations to Flatirons. *Id.*¶¶ 295–316.

Further, each party understands their role in the conspiracy. Ms. Iberlin advised Glenrock to enter into this arrangement and obstruct Eastern Point from obtaining information. *Id.* ¶¶ 295–316. Glenrock continues to serve as the conspirators' governmental authority and is compensated for its role. *Id.* ¶ 320. Mayor Roumell signs off on the QSF petitions on behalf of Glenrock. *Id.* ¶ 294. In addition, Glenrock delegated its authority to disclose public records to Wyoming citizens to Flatirons, as Eastern Point discovered that Flatirons is paying for Glenrock's legal fees to withhold public records. *Id.* ¶ 311. At this early stage in litigation, Eastern Point will undoubtedly uncover more evidence of the Glenrock Defendants' participation in the conspiracy. Nevertheless, the allegations are more than sufficient to demonstrate the Glenrock Defendants' participation in the conspiracy.

Third, the coconspirators' contacts are sufficient to subject them to Virginia. As mentioned, Mr. Norman, Mr. Coccimiglio, Ms. Barber, and Mr. Bunnell physically entered Eastern Point's offices in Virginia. *Id.* ¶¶ 198–218. In addition, forum selection clauses—contained in the Terms of Use—bind Mr. Norman, Mr. Coccimiglio, Mr. Bunnell, and Defendant Michael Upchurch to Virginia, assenting to jurisdiction in Virginia more than 6,000 times. *Id.* ¶¶ 138–411. Thus, the coconspirators' contacts with the forum are sufficient to exercise personal jurisdiction over these co-conspirators.

Therefore, personal jurisdiction is satisfied over the Glenrock Defendants. Courts often note the struggles with alleging a civil conspiracy claim, as the claim is, "by its very nature, covert and clandestine and usually not susceptible of proof by direct evidence. Consequently, conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators and other circumstances." *Anthony v. Ward*, 336 F. App'x 311, 320 (4th Cir. 2009) (internal citations, quotations, and alterations omitted). Here, Eastern Point sets forth detailed facts, including but not limited to the Glenrock Defendants' compensation for aiding the conspirators and agreeing to delegate the withholding of public records subject to the Wyoming Public Records Act to Flatirons. These facts, *at a minimum*, demonstrate the Glenrock Defendants' participation in the conspiracy, and in turn, subject them to jurisdiction in Virginia. Accordingly, the Court should deny the Glenrock Defendants' Motion to Dismiss under Rule 12(b)(2).

**IV.     Governmental Immunity does not apply to the Glenrock Defendants.**

The basis for the Glenrock Defendants' 12(b)(6) Motion is sovereign immunity. The Glenrock Defendants seek to avoid liability for its conduct by arguing that the Wyoming Governmental Claims Act (WGCA) immunizes them. However, this argument is flawed for three reasons. First, the Glenrock Defendants appear to invoke the Eleventh Amendment to argue that the WGCA applies to the instant claims, but courts uniformly hold the Eleventh Amendment is inapplicable to municipalities like Glenrock. Second, such immunity would not extend under Virginia law. Third, such allegations would not be supported under Wyoming law, as the Glenrock Defendants rely on law that has been *expressly* overturned. Therefore, the Court should deny the Glenrock Defendants' invocation of immunity.

**a.  The Glenrock Defendants fail to allege that the Eleventh Amendment applies to them.**

As an initial matter, the Glenrock Defendants attempt to argue that their conduct is immune under the WGCA. To demonstrate the WGCA's applicability, the Glenrock Defendants cite to *Franchise Tax Board of California v. Hyatt,* 587 U.S. 230 (2019) (hereinafter "*Hyatt III*"). *Hyatt III* marked the case's third appearance before the U.S. Supreme Court. *Id.* at 233; *see Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488 (2003) (hereinafter "*Hyatt I*"); *Franchise Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171 (2016). However, *Hyatt III* is inapplicable because it solely concerned a *state* entity's immunity under the Eleventh Amendment. *Id.* at 243. Here, the suit is brought against the Glenrock—a local governmental unit—and two of its agents. It is well settled that "the Eleventh Amendment does not extend its immunity to units of local government." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001); *see Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002) ("Eleventh Amendment immunity does not extend to mere political subdivisions of a State such as counties or municipalities."). Thus, the Court may completely disregard the Glenrock Defendants' argument because there is no authority offered by the Glenrock Defendants that avails the Eleventh Amendment to them under another state's governmental immunity statute.

**b. Alternatively, the Glenrock Defendants would not be entitled to immunity under Virginia law.**

Nevertheless, to the extent the Court was inclined to analyze such immunity, the Glenrock Defendants fail to demonstrate its extension is appropriate here. Because Eastern Point brings state law claims against the Glenrock Defendants,[2] it is appropriate to analyze whether Virgina would

---

[2]  EPTC notes that it brings two trade secret claims—state and federal—against Ms. Iberlin. However, Ms. Iberlin is sued in her individual capacity. Practically speaking, the Uniform Trade Secrets Act allows civil suit to be brought against "persons" who misappropriate trade secrets. *See, e.g.*, Va. Code Ann. § 59.1-336 *et seq.* "Persons" is defined in both Wyoming's and Virginia's statutory schemes as "a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, *government, governmental subdivision or agency*, or any other legal or commercial entity." Va. Code Ann. § 59.1-336 (emphasis added); Wyo. Stat. Ann. § 40-24-101(a)(iii). The only difference between the two definitions is that Virginia's statute contains an oxford comma and Wyoming's does not. Thus, even if a qualified immunity analysis was appropriate, governmental entities and its agents are certainly liable for violations of the Uniform Trade Secrets Act.

12

recognize Wyoming's qualified immunity under the facts alleged in the Complaint. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 876 S.E.2d 917, 926 (Va. 2022) ("[F]ederal courts have consistently described 'the nature and scope of a claimed immunity' as a matter of '*substantive* state law." (emphasis in original).

Certainly, Virginia law would not recognize the Glenrock Defendants' claimed immunity under the alleged facts in the Amended Complaint. Courts have explicitly rejected the notion that Virginia immunity law applies to out-of-state municipalities and actors. *Bays v. Jenks*, 573 F. Supp. 306, 308 (W.D. Va. 1983). Simply put, "[w]hen a sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of sovereign immunity doctrine as to those activities." *Id.* (alteration in original) (quoting *Hall v. Univ. of Nev.*, 141 Cal.Rptr. 439, 441 (Cal. Ct. App. 1977)). Here, the Glenrock Defendants conspired with the other named Defendants, who entered the Commonwealth and committed tortious conduct. Just as runners in a relay pass a torch that continues forward regardless of who carries it, the Glenrock Defendants grabbed the conspiratorial torch from their forum-entering coconspirators. Thus, the claimed immunity cannot be recognized.

Second, a Virginia court would not recognize such immunity for its own officials. As mentioned, the Glenrock Defendants rely on *Hyatt III*; instead, *Hyatt I* is the proper analysis. The facts of the case stem from a Nevada resident, who had recently moved from California, filing a suit in Nevada state court related to a California tax agency's investigation of his tax documents. *See Hyatt I*, 538 U.S. at 490–91. The California agency argued that it was immune from suit under California statute. *Id.* at 491–92. Applying principles of comity, the Nevada Supreme Court ultimately held that the trial court was not required to enforce California's immunity laws because doing so would contravene Nevada's policies. *Id.* at 492. Thus, the issue in *Hyatt I* was whether

13

the Full Faith and Credit Clause of the U.S. Constitution required a Nevada state court to "to give full faith and credit to California's statute providing its tax agency with immunity from suit." *Id.* at 494.

The U.S. Supreme Court held that it did not and affirmed the Nevada Supreme Court's decision to not enforce California's immunity statute. *Id.* at 499. In doing so, the U.S. Supreme Court reasoned that "a State need not substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Id.* at 496 (quotations omitted). It is based on this principle that courts uniformly decline to adhere to a foreign state's sovereign immunity statutes when the forum state would not recognize such immunity. *Promenade D'Iberville, LLC v. Jacksonville Elec. Auth.*, 411 So. 3d 1050, 1065 (Miss. 2025) .

Applying these principles here, a Virginia court would not recognize immunity for the Glenrock Defendants. Municipalities and their officials "are not immune if the evidence establishes that (1) they committed intentional torts, irrespective of whether they acted within or without the scope of their employment, or (2) they acted outside the scope of their employment." *Fox v. Deese*, 362 S.E.2d 699, 706 (Va. 1987) (citations omitted). Here, both are present. Glenrock and Mayor Roumell are alleged to have committed the following intentional torts: (a) RICO violations, Am. Comp. 40, ¶¶ 505–10; (b) conspiracy to injure a business, *Id.* ¶¶ 511–16; and (c) common law conspiracy, *Id.* ¶¶ 517–22. Further, Mayor Roumell is alleged to have acted outside of his duties. *Id.* ¶¶ 294, 312, 313, 316, 318. Ms. Iberlin is alleged to have committed the following intentional torts: (a) misappropriation of trade secrets under federal law, *Id.* ¶¶ 401–20; (b) misappropriation of trade secrets under federal law, *id.* ¶¶ 421–40; (c) defamation, *Id.* ¶¶ 462–77; (d) RICO violations, Dkt. 40, ¶¶ 489–510; (e) conspiracy to injure a business, *Id.* ¶¶ 511–16; and

14

(f) common law conspiracy, *Id.* ¶¶ 517–22. These allegations, which will be proven, will strip away any claimed immunity.

Therefore, principles of comity would warrant against granting immunity. As a practical matter, it makes little sense that a Virginia court would grant more immunity to an out-of-state municipality than its own. Accordingly, immunity is inapplicable in the present case.

### c. Alternatively, the Glenrock Defendants would not be entitled to immunity under Wyoming law.

Further, Wyoming courts would not recognize such immunity here. As an initial matter, the Glenrock Defendants are attempting to mislead the Court by arguing that "Plaintiff has failed to plead compliance with the Act's mandatory pre-suit notice requirements, an independent and fatal procedural defect." Memo., at 19. For support, the Glenrock Defendants cite *McCann v. City of Cody*, 2009 WY 86, 210 P.3d 1078 (Wyo. 2009). However, *McCann* was overruled by *Brown v. City of Casper*, 2011 WY 35, 248 P.3d 1136 (Wyo. 2011). *Brown* expressly held that courts may "hear and decide actions brought against governmental entities, whether or not compliance is alleged, if a notice of claim complying with the constitutional and statutory requirements has been presented." 2011 WY 35, ¶ 44, 248 P.3d at 1147. While such a citation may be individually overlooked, it actually reflects a pattern.

Nevertheless, under Wyoming law, "[a] governmental entity and its public employees *while acting within the scope of duties* are granted immunity from liability for any tort" with certain exceptions. Wyo. Stat. Ann. § 1-39-104(a) (emphasis added). "'Scope of duties' means performing any duties which a governmental entity requests, requires or authorizes a public employee to perform regardless of the time and place of performance[.]" *Id.* § 1-39-103(a)(v). "When an official acts outside the scope of his authority, he acts individually and not in his official capacity and,

15

therefore, he cannot claim the protection of qualified immunity." *Kanzler v. Renner*, 937 P.2d 1337, 1344 (Wyo. 1997).

Here, Wyoming law does not require municipalities to approve QSFs. Rather, the acts related to approving QSFs were not requested, required, nor authorized. Under Wyoming law, "[n]o action of a governing body of an agency shall be taken except during a public meeting following notice of the meeting in accordance with this act. *Action taken at a meeting not in conformity with this act is null and void and not merely voidable*." Wyo. Stat. Ann. § 16-4-403(a) (emphasis added). To this end, Glenrock and its agents—Mayor Roumell and Ms. Iberlin—did not obtain the governing body's approval on three instances, all of which constitute an act in furtherance of the conspiracy.

First, as alleged in the Complaint, Glenrock and its agent were not authorized to approve QSFs because there was no approval from the governing body. In the Public Records Case, Glenrock admitted that it did not obtain approval from the governing body to approve QSFs. Am. Comp., ¶ 313. Second, Glenrock entered into a Joint Defense Agreement with the coconspirators without a public meeting. *Id.* ¶ 316. Such action was taken during an executive session without public notice nor approval outside of an executive session, contrary to law. *See* Wyo. Stat. Ann. § 16-4-403(a). Third, Glenrock improperly delegated its authority to Flatirons to control the release of public records. *Id.* ¶ 311. In the Public Records Case, Glenrock admitted that is funding and controlling Glenrock's defense of a public records case in Wyoming state court. *Id.*

Therefore, the immunity would not apply because all these acts in furtherance of the conspiracy and related to the underlying claims alleged in the Complaint were taken outside the scope of the Glenrock Defendants' duties—including the Town itself. Specifically, Glenrock and its agents were not authorized to engage in the conduct alleged in the Amended Complaint because

it failed to: (1) obtain approval from the governing body; and/or (2) publicly notice the actions contemplated in the Amended Complaint. Accordingly, the Court should deny the Glenrock Defendants' request for dismissal on the basis of immunity.

**V.      The Glenrock Defendants' remaining 12(b)(6) arguments should be rejected.**

As to the RICO claims, the Glenrock Defendants incorporate by reference the arguments made by the non-Glenrock Defendants.  In turn, Plaintiff incorporates by reference its responses to those arguments as though fully set forth herein.

Aside from the RICO, claims the Glenrock Defendants argue that: (1) the conspiracy related claims are insufficient against Mayor Roumell and Glenrock, <u>Memo</u>, at 20–22; (2) Eastern Point conclusory alleges that Ms. Iberlin had knowledge of the trade secrets, *Id.* at 22–23; and (3) the defamation claim fails because it is based on expression of opinions, *Id.* at 23–29. For the reasons stated below, these arguments are misguided.  As to the defamation claim specifically, however, Eastern Point intends to withdraw that claim and has done so in the pending Second Amended Complaint while pursuing other claims related to Ms. Iberlin.

**a.  Conspiracy claims are well-supported.**

First, the Glenrock Defendants' selective use paragraphs do not demonstrate their full knowledge and participation of the conspiracy. The Glenrock Defendants merely point to Paragraphs 286 and 290 to support its argument, but neglect to mention the overwhelming amount of allegations support Eastern Point's conspiracy related claims. As mentioned in the jurisdictional discuss, *supra,* Mayor Roumell and the Town of Glenrock joined the conspiracy when Ms. Iberlin exchanged EPTC-branded documents. Am. Comp. ¶ 286. While this alone is sufficient, the Glenrock Defendants unquestionably joined of the conspiracy when Lovell's town attorney sent the cease-and-desist letters to one of Glenrock's agents. *Id.* ¶¶ 289–90. And if there existed any

17

doubt, the Glenrock Defendants violated their duties to provide public records by erroneously claiming privilege over documents, delegating their constitutional obligations to Flatirons. *Id.*¶¶ 295–316.

The Glenrock Defendants claim that "contrary to governing law, Plaintiff did not allege that the Glenrock Defendants used the protected information." <u>Memo</u>. p. 21. Oddly, the Glenrock Defendants do not cite any law for this proposition—nor could they. If the Glenrock Defendants are referring to the RICO claims raised under 18 U.S.C. §§ 1962(d), 1964(c)—notwithstanding the claim to have incorporated the non-Glenrock Defendants arguments, nothing therein requires the "use" of protected information. Such a contention is directly against the purpose of RICO. RICO famously attacks organized crime due to the fact that many frauds move behind the shadows. Thus, the fact that Mayor Roumell and Glenrock didn't "use" the information is immaterial to any apparent issue in the pleadings. The Glenrock Defendants had a duty to state their claims with particularity but have not done so here. *See Local Rule 7(a).*

In addition, the Glenrock Defendants baldly claim that EPTC only alleges that "Glenrock acted pursuant to Federal Treasury Regulations to approve QSFs." <u>Memo</u>, pp. 21–22. This allegation is plainly contradicted by the wealth of other information included in the Amended Complaint including that recited here in the jurisdictional analysis related to the conspiratorial actions with the other Defendants as well as the allegations recited in this section. Glenrock can only act through its agents and is charged with the knowledge and actions of those agents.

### b. Ms. Iberlin knew about the trade secrets and protected information.

The Glenrock Defendants assert that "[t]here are no actual facts alleged in the complaint that would indicate how Ms. Iberlin should have known that information she received was a trade secret." <u>Memo, p.</u> 23. This assertion is directly contrary to allegations, perhaps in a calculated

effort to mislead the Court.    Indeed, to be blunt, both pleadings in support of both Motions to Dismiss have a common theme of simply and baldly saying that Eastern Point has not alleged or not sufficiently alleged certain facts when relevant facts were plainly alleged.

Contrary to the claims in the Memo, Eastern Point alleges that, "[i]n Iberlin's communications with these municipalities, she also disclosed Eastern Point's trade secrets and confidential information, including but not limited to files titled 'EPTC Banking Network,' 'List of Banks,' and 'QSF Memorandum in Support – EPTC.'" Am. Comp. ¶ 281. Further, "the Settlement Conspirators, Flatirons, and Iberlin used Eastern Point's trade secret and confidential information extensively in their efforts to recruit municipalities like Glenrock as governmental authorities." Id. ¶ 284.   The details of the conspiracy and actions of Glenrock, Roumell, and Iberlin are set out in expansive detail in paragraphs 264 through 320 wherein the details of Glenrock's, through Iberlin and Roumell, participation in the conspiracy, their knowledge of the trade secret status of the information being utilized and their concerted action with the other Defendants is plainly spelled out.

<div style="margin-left:40%">

Respectfully Submitted,
EASTERN POINT TRUST COMPANY,
By Counsel.

</div>

 /s/ Gershom A. Young, Esq.
Mark R. Dycio, Esq. (VSB No. 32741)
T. Wayne Biggs, Esq. (VSB No. 41281)
Clifford Clapp, Esq. (VSB No. 85388)
Gershom A. Young, Esq. (VCB No. 93865)
10533 Main Street
Fairfax, Virginia 22030
T: (703) 383-0100
F: (703) 383-0101
mdycio@dyciolaw.com
twbiggs@dyciolaw.com
cclapp@dyciolaw.com
gayoung@dyciolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 7th day of April, 2026, a true and correct copy of the foregoing

was electronically filed via CM/ECF, which will send notice of the filing to all counsel of record.


   /s/ Gershom A. Young         
Gershom A. Young, Esq.

20